**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CRIMINAL ACTION NO. 06-65-DLB**

**UNITED STATES OF AMERICA**                                                                 **PLAINTIFF**

**VS.**                                 **MEMORANDUM OPINION AND ORDER**

**MELVIN JARVIS**                                                                 **DEFENDANT**

****************************

## I.        Introduction

This matter is before the Court upon Defendant's Motion to Set Aside his guilty plea entered on April 30, 2007 (Doc. # 60).  The government having filed its response in opposition to the motion (Doc. # 61), and the time for filing any reply having now expired, the motion to withdraw guilty plea is now ripe for the Court's review.  Because Defendant has failed to establish a fair and just reason to withdraw his guilty plea, the motion is **denied**.

In his motion, filed through newly retained counsel Darrell Cox, Defendant submits that because his previously retained counsel, Ken Lawson, has been temporarily suspended to practice law by the Ohio Bar Association, he should be permitted to withdraw his guilty plea.  More specifically, Defendant claims that prior to entering his guilty plea, he had voiced concerns regarding attorney Lawson's "ability to defend the action, his preparation and disclosure of discoverable matters."  (Doc. # 60 at ¶ 2).  Defendant boldly assets that "Attorney Lawson's ability to defend him has been compromised by his

1

admission of substance abuse."  (*Id.* at ¶ 4).[1]

For its response, the government submits that Defendant's guilty plea was entered into knowingly and voluntarily, with full knowledge of the consequences of the plea, and that application of the *Bashara*[2] factors do not warrant the withdrawal of his guilty plea in this case.  The government also asserts that while Defendant did express some concerns regarding attorney Lawson's drug dependency and its potential impact on Lawson's ability to adequately defend Defendant at trial, those concerns were adequately addressed by the Court.

## II.    Procedural and Factual Background

On December 13, 2006, the grand jury returned a superseding indictment which charged Defendant with four substantive violations of federal law.[3]  Counts One, Two, and Four charged Defendant with the distribution of quantities of crack cocaine, and Count Three charged Defendant with possessing a quantity of crack cocaine with intent to distribute, all counts in violation of 21 U.S.C. § 841(a)(1).  One week later, on December 20, 2006, Defendant appeared for arraignment with retained counsel Ken Lawson and pled not guilty to all counts.  The Court accepted Defendant's plea of not guilty and set the matter for a pretrial conference on January 26, 2007 and a jury trial on February 20, 2007.  The Court also set a deadline of January 5, 2007 for defense counsel to file pretrial

---

[1]  Although Defendant takes issue with Attorney Lawson's failure to initially comply with the Court's admission procedures and mandatory Electronic Case Filing (ECF) system, there was no prejudice to Defendant as Lawson was permitted to represent Defendant and all paper filings were filed and adjudicated by the Court.  Thus, paragraph five of Defendant's motion provides no basis for withdrawal of Defendant guilty plea.

[2]  *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)

[3]  Count 5 was a forfeiture count in violation of 21 U.S.C. § 853.

motions.  This deadline was extended until January 8, 2007.  Defense counsel filed three pleadings by the deadline, a motion to suppress, a motion to dismiss the superseding indictment, and a demand for favorable evidence.  The motion to suppress was referred to the Magistrate Judge who recommended that it be denied.  The Court adopted the recommendation of the Magistrate Judge.  The motion to dismiss the indictment was also denied for lack of specificity.

On January 25, 2007, defense counsel filed a motion to continue the pretrial conference.  The Court granted the motion and continued the pretrial conference until February 23, 2007.  The Court later was advised by defense counsel that the continuance was necessitated due to Attorney Lawson's admission into an inpatient substance abuse treatment center.  Neither Defendant nor Attorney Lawson were present for the February 23, 2007 pretrial conference.  The matter was reset for March 2, 2007.  However, once again neither Defendant nor defense counsel were present.  Although the government moved to have a bench warrant issued for Defendant based on his failure to appear, the Court denied that request, choosing instead to have a summons issued for defendant and scheduling a further show cause hearing on March 7, 2007.

On March 7, 2007, the case was called for pretrial conference.  During that hearing, the Court found that Defendant had shown good cause why he failed to appear for Court and was advised that defense counsel had recently completed an inpatient substance abuse treatment program and was continuing his detox regimen.  At the request of defense counsel, the Court set a trial date of April 30, 2007.  In the interim, defense counsel filed a motion for Brady materials which was denied as moot because the government was already on notice that Brady materials were to be disclosed in time for effective use at trial.

3

Sometime during the week of April 23, 2007, the Court was informally notified by Defendant's pretrial services officer that Defendant was having second thoughts about his retention of Attorney Lawson as counsel and was considering other counsel. In view of the impending trial date of April 30, 2007, the Court convened an in-chambers ex-parte conference with Defendant, Defendant's friend Vivian Cook, and Attorney Lawson on Friday afternoon, April 27, 2007. The purpose of the conference was to discuss issues relating to Defendant's continued retention of Attorney Lawson. The conference was not recorded.

After listening to Defendant's concerns, which included Defendant's belief that Attorney Lawson was not giving Defendant's case the attention it deserved due to his own substance abuse issues, the Court asked Defendant what Lawson had failed to do to adequately prepare for trial and reminded Defendant that the trial date had been continued to account for Lawson's absence. Defendant mentioned a list of motions Lawson was supposed to file on his behalf but was unable to produce any list.[4] When asked if there were witnesses Attorney Lawson was supposed to subpoena for trial which he had been unable to locate due to his absence during his drug rehabilitation, Defendant indicated he was unaware of any such witnesses. When asked what Attorney Lawson had failed to do in preparation for the trial, Defendant reiterated that Lawson's own addiction issues made it difficult for him to have confidence in Lawson. After assuring Defendant that Attorney Lawson was more than competent to handle the case, which the Court characterized as a fairly typical drug case, Defendant, Miss Cook, and Attorney Lawson requested an

---

[4] The record reflects Lawson did file several motions and discovery-type requests on behalf of Defendant.

opportunity to meet outside the presence of the undersigned to discuss Lawson's continued representation.

A short time later, the three individuals emerged from their meeting and advised the undersigned that while Defendant was still somewhat reluctant to proceed with Attorney Lawson as his counsel, they had reached a consensus that Defendant's continued retention of Attorney Lawson would continue. This consensus was then placed on the record during a brief follow-up conference which included the prosecutor (Doc. # 62 at p.3).

On April 30, 2007, the matter was called for a final pretrial conference at 9:30 a.m. Defendant was present with Attorney Lawson. During the conference, the prosecutor referenced the in-chambers conference held three days earlier and requested some guidance on how the Court intended on dealing with the issue of Attorney Lawson's drug rehabilitation during voir dire (Doc. # 58 at p. 7). The following relevant colloquy between counsel, Defendant, and the Court occurred:

MR. LAWSON: Judge, I spoke with my client twice this morning. He's indicated his concern that when he said it was personal Friday, that it wasn't anything about what I was doing as far as an attorney is concerned. His concern, I guess, over the weekend, why we didn't have any contact over the weekend is that the jury may take out on him what they know about me.

THE COURT: Well, I can certainly bring that up in voir dire, if you want me to. I don't think that, properly instructed, the jury will make any decisions in this case other than what they're obligated to do. That is, consider the evidence, make a finding regarding the evidence based on the law the Court gives them and nothing else.... And I can tell you, Mr. Jarvis, if you want me to bring it up, I can discuss there have been issues regarding -- you may have read some newspaper articles, et cetera, about the defense lawyer. Of course, that has no role at all in this case. He's representing Mr. Jarvis. I can bring it up. I think it's better if I bring things up of a sensitive nature.

(*Id.* at p. 8).

MS. VOORHEES: Judge, that's Mr. Lawson's decision. I just want it to be clear on

the record that Mr. Jarvis, who is sitting here today, is fully aware that Mr. Lawson has had drug addiction issues, that he's been through rehabilitation, that he's completed that rehabilitation, that he's been out and practicing and zealously representing his defendants since that point in time, and the defendant is not going to dispute that later.

THE COURT:  You were aware of that Friday, were you not, Mr. Jarvis, and earlier, through conversations that you had with Miss Cook and myself, that you knew that Mr. Lawson had had some addiction issues and had been through rehabilitation, correct?

THE DEFENDANT:  Well, I know when it came through the article that was put out in the newspaper.  I have discussed this issue with him a little bit, and I'm still uncomfortable with it, but what am I to do?

THE COURT: Well, I mean, an individual in your situation is not going to be completely comfortable because of the fact that you've been indicted by a grand jury and you're getting ready to start a jury trial. We talked about this. The record will reflect that the *ex parte* meeting that the Court had with Mr. Lawson and Mr. Jarvis and Miss Cook related to the defendant's continued retention of Mr. Lawson and issues regarding that. And I think you can correct the record if it is not accurate, but there was a discussion about your comfort level with Mr. Lawson. *There wasn't anything that he necessarily hadn't done on your behalf as far as subpoenaing witnesses or anything regarding the defense of the case.* It was more we had this issue about, I guess, holding your hand and making you feel comfortable as a defendant, versus him having all the evidence that the United States was going to have in this case and be prepared to defend you in this action.  I mean, they are two different things. It's like a doctor, the bedside manner. A doctor may have a terrible bedside manner but be a tremendous brain surgeon. Mr. Lawson may not have a great bedside manner, but he's a very competent and has tried hundreds, if not thousands of cases in federal and state court.  So I think once the trial starts and we get a jury in and we're selecting the jury, I think the competence level of your attorney is really not, at least in the Court's view, at issue.

(*Id.* at 9-10) (emphasis added)

The Court then had an *ex-parte* conference with Mr. Lawson and the Defendant at

the bench to ensure that any attorney-client privileged information was not disclosed to the

prosecutor.  The record reflects the following relevant discussion:

THE COURT: The reason I brought you to the Bench, Mr. Jarvis, I want to make sure if there's anything you bring up as far as the defense of the action, the government is not entitled to that discussion, because that's certainly something between you and your attorney as part of an attorney/client privilege.  I don't think you're going to be getting into that, but just out of an abundance of caution, that's why I'm here at the Bench with you and Mr. Lawson....  The trial is getting ready to start. We're going to bring the jury in at 10:00.

Your comfort level, whether it's Mr. Lawson or any other lawyer, his -- when I say his, Mr. Lawson's rehabilitation and prior addiction issues, I don't think, in my humble opinion, are going to matter at all in this case.  If you want me to bring that up, I will, but I don't think it's really necessary.  If you want me to bring it up, I'll bring it up. I don't want to put the focus on you, because it shouldn't be, Mr. Lawson.

MR. LAWSON:  I know, and it is uncomfortable, Judge, but it's something I have to deal with. I don't know what to do, you know.  I got the Brady information on Friday. It's important.  It changed the whole theory of our case.  He has not contacted me.  I mean, we have not met since Friday after we left.  As soon as I got out, I immediately contacted him, and it wasn't until this morning he told me what the problem was, you know. I mean, we've had -- I told him, I said, I feel like I'm not prepared to defend you the way I should. The whole theory has changed.

THE COURT:  When you say the Brady material, exculpatory material, if the informant has prior convictions, those are things you would anticipate an informant having. If the informant has prior drug addiction issues, that's information, while it may not be known exactly what the issues are, those are things a crack addict, for instance --

MR. LAWSON: It's not that.  Without divulging any attorney/client defense, we can either go against the evidence or with it.  And what changed this weekend, at least in my mind, is instead of going against it as we prepared for, he needs to go with it.  I just -- the issue is did he sell it or give it. And that's going with the evidence to a certain extent, as opposed to "I didn't do it." And, you know, I contacted him. I told him it was important for us to meet, because now he has to take the stand.

THE COURT: Mr. Jarvis, it's your obligation to stay in touch with your attorney. I didn't emphasize that Friday at all because, frankly, that's something that if you're worried about Mr. Lawson being prepared, and he had asked you to meet over the weekend, and you didn't show up or didn't contact him, it's difficult for the Court to understand how you can then complain about him not being prepared, him not being able to defend you adequately.

MR. LAWSON: I think what he told me this morning was he wanted a new attorney.

THE COURT: You're not going to have a new attorney.  Not at this stage. We talked about this Friday. We're ready to go. The trial's going to start. If you want to make an oral motion to continue, I'm going to deny it. If you want to make an oral motion for a new attorney, I'm going to deny it. That's the reason I had the conference Friday. I wanted to take up the issues Friday. I felt like we had a discussion Friday with Mr. Lawson and you, and I wanted to put the issue to bed.  You will have the luncheon recess. I take other recesses during the day, the overnight recess.... But I'm not going to continue the trial. I'm not going to have a new attorney the morning of trial. That's the whole reason I had this issue Friday.

MR. LAWSON: Can we at least do opening statements after the lunch break?

THE COURT: We'll certainly do that. We'll do that.

MR. LAWSON: Okay.

THE COURT: We'll take an earlier lunch. We'll get the jury in and give preliminary instructions, and then we'll take our recess.

MR. LAWSON: When will you bring up the issue with my background?

THE COURT: Do you want me to take it up?

MR. LAWSON: I would suggest this, Judge. Tell me what you think. If you ask the jury, do they know any attorneys, have seen them anywhere --

THE COURT: I will ask that question.

MR. LAWSON: -- I think it will come up.

THE COURT: Has anybody read anything about the attorneys of any kind. If they raise their hand, we'll bring them to the Bench and talk about it then. So if one juror doesn't know anything, it doesn't make sense for me to tell them something they don't already know. Follow me, Mr. Lawson?

MR. LAWSON: I don't mind them knowing

*** *** ***

MR. LAWSON: I just, I'd rather have it out. That way, I don't have to -- I'll leave that to Mr. Jarvis. I don't want to have it in the back of my head, you know what I mean?

THE COURT: I'll ask the follow-up question, after I ask about the attorneys....

(*Id.* at 11-16).

Upon conclusion of the side-bar conference, the Court advised counsel that after asking the prospective jury pool if anyone knows any of the attorneys, the Court would ask whether anyone heard anything about any of the attorneys, and then a follow-up question regarding the fact that Mr. Lawson was recovering from the disease of addiction. (*Id.* at 16-17)

Defense counsel thereafter orally moved to continue the trial because his defense

theory had changed over the weekend and that additional time was necessary.  Defense counsel also orally moved to withdraw, which the Court also construed as a motion for new counsel.  Both motions were denied.  (*Id.* at 17-18)

At approximately 10:00 a.m., with the prospective jury pool in the gallery awaiting the start of voir dire, the Court was advised during a side-bar conference that Defendant wished to change his plea from not guilty to guilty (Doc. # 57 at p. 2).  According to defense counsel, Defendant indicated that "he would rather take the ten years than take the chance on getting more time....  My client indicated that he would rather take the ten years than take the chance and getting all the relevant conduct." (*Id.*)  The Court thereafter dismissed the prospective jurors and proceeded to question Defendant regarding his intentions.  According to defense counsel, after the denial of the oral motions, presumably to continue and for new counsel, Defendant concluded it was in his best interest to plead guilty.  (*Id.* at 4).

Prior to accepting Defendant's guilty plea, the Court informed Defendant that he would not be forced to do anything (*id.* at 5) and reminded him of his right to a jury trial.  Defendant was thereafter placed under oath and the Court reminded Defendant that everything was in place to begin the jury trial, and described for him the voir dire process and how juror challenges would be exercised.  After telling Defendant that the Court would not grant a continuance, the following relevant colloquy transpired:

THE COURT:  Do you think you've had enough time to talk about the evidence in this case that the United States would prove or they indicated they're going to prove if the case proceeded to trial; that is, the testimony, the summary of the witnesses who are going to be called, what they're going to say, what the evidence was, pursuant to the state search warrant, which I've already overruled the motion to suppress on? Do you think you've had enough time to talk to Mr. Lawson about that evidence, what the proof's going to be?

THE DEFENDANT: Yes.

THE COURT: All right. So if the police officer testifies that on such and such a date, I executed a search warrant and we found these scales and this crack cocaine and this other paperwork, you know what the proof's going to be in this case, I take it, correct?

THE DEFENDANT: Pretty much, yes.

THE COURT: And you've talked to him about that, Mr. Lawson; is that correct?

MR. LAWSON: Yes, Your Honor.

(Doc. # 57 at 12-13)

With respect to Defendant's satisfaction with Attorney Lawson, the record reflects

the following:

THE COURT: We had a lengthy discussion last Friday in chambers as well as this morning about your relationship with Mr. Lawson. Despite your hesitancy and reservations about his not being able to hold your hand, et cetera -- and I'm using that term loosely. I'm not being critical in any way. But I just want to make sure that you are satisfied that he has represented you sufficiently in this case.

THE DEFENDANT: I'm not totally satisfied with that, but --

THE COURT: Pardon?

THE DEFENDANT: I'm not totally satisfied with that, but we did come to some understanding about it.

THE COURT: Now, being totally -- what would be your definition of being totally satisfied?

THE DEFENDANT: I just feel Mr. Lawson's condition has hindered him from being able to do this particular trial.

THE COURT: In what way?

THE DEFENDANT: The lack of participation on his part.

THE COURT: Is it true that he had set up an appointment Saturday with you and you didn't show up?

THE DEFENDANT: That was true. We made contact over the telephone. I was still

pondering over the thought of what was going on with Mr. Lawson pertaining to this case. And I just feel like since you denied the motion, since you denied it, changing to another lawyer, that I was gonna have to go with him anyway. So irregardless if I met with him or not, we still were going to have to be here in front of you.

THE COURT: Well, once I denied -- the record will reflect that we had a discussion in chambers about you and your attorney, and we came to some realization or came to some consensus that you were going forward with Mr. Lawson, and you were satisfied with that. Isn't that an accurate statement of what we talked about in chambers?

THE DEFENDANT: To a point. We were going forward. I wasn't totally satisfied.

THE COURT: Well, you understand that Mr. Lawson's situation with his recovering from a disease or addiction since March or late February, whenever it was, Mr. Lawson, Mr. Jarvis, is there something that your attorney has failed to do as far as the representation of you in this case; that is, obtaining somebody to say that that's not me on those tapes, or I didn't sell this, or this evidence isn't accurate? Is there something that he did or that he didn't do to be able to defend you in this case? If so, what is it?

THE DEFENDANT: Well, you asked me for something very specific. I think overall, he just wasn't focused on this case, due to his addiction. I hired Mr. Lawson before he actually came into recovery.

THE COURT: Right. You did. And the record will reflect, I think he was retained at the end of last year.

THE DEFENDANT: And I just find it, as being an addict myself at one time, you know –

THE COURT: You certainly understand that people deserve a second chance.

THE DEFENDANT: I definitely do.

THE COURT: You're probably a benefactor of that to some extent.

THE DEFENDANT: Yeah, to some extent. But as me knowing that, I just couldn't come to grips that Mr. Lawson had put his all in it, knowing that he couldn't, because he was in his addiction.

THE COURT: Well, as you know --

THE DEFENDANT: Now we're here, set up for a trial that he's unprepared for.

THE COURT: And he's unprepared for it because of what?

11

THE DEFENDANT: Well, I had a -- as I spoke with you Friday, it was a whole list of motions that Mr. Lawson, when I first retained him, that he went through that he was gonna file.

THE COURT: We talked about a couple of those. A motion to dismiss, a motion to suppress.

THE DEFENDANT: You only talked about two. It was a list.

THE COURT: What are the others?

THE DEFENDANT: It was a list. If I could, just from memory, I may have those.

THE COURT: That's fine. Why don't you get that.

THE DEFENDANT: Because we took notes.

THE COURT: Mr. Jarvis?

MS. COOK: (From the gallery) Can I talk to him for a minute?

THE DEFENDANT: No.

THE COURT: Go ahead.

THE DEFENDANT: We took notes, Your Honor.

THE COURT: The important thing for me here, the important thing that you need to recognize is if there's something that, due to Mr. Lawson's being in a recovery -- I think it was inpatient, as I recall. If there's something that he needed to be doing during that period of time that he didn't that has impacted his ability to defend you in this action, we can talk about that. As you know, I continued the trial for approximately 45 to 60 days once he -- "he" being Mr. Lawson – was out of recovery. And, in fact, we're here on April 30th. I think the record reflects an early March pretrial conference we had, at which time I continued the trial at his request.  So the last six to eight weeks in this case, he's not been in recovery. Well, he has been. He hasn't been in inpatient recovery, I'm sorry.  If there's something that he did or didn't do which has impacted his ability -- when I say "he," something Mr. Lawson didn't do, we can talk about it. If it's something like -- he indicated that you had a meeting that you acknowledged that he set up over the weekend that you didn't show up for.  I'm kind of being asked to continue this matter, give you a new lawyer when the record reflects that your attorney, a very competent attorney, set up a meeting to discuss with you the defense of this case, and you weren't there.  I'm kind of hamstrung here, Mr. Jarvis. I'm trying to determine exactly what it is -- and I know you're not a lawyer, and I'm not trying to pin you down, other than to just figure out what is it that he did that you wanted him to do that would have made a difference, frankly. I mean, the evidence is what

it is. I told you that Friday. The evidence is going to be presented. It's my job as the umpire, if you will, to make sure that everything that's admitted is admitted consistent with these Rules of Evidence. Mr. Lawson's as good as anybody at knowing what's in that book. If something should be objected to, I know he would object. The fact that the crack cocaine is -- in fact, crack cocaine, generally, unless it's contested, that's something that really comes in without any objection. The fact that we have an informant who is going to be called as a witness, I'm sure Mr. Lawson has cross-examined hundreds, if not thousands of informants in his career. And the fact that the informant's name is John Doe or Jane Doe, if you will, in this case really doesn't impact his ability to prepare for a cross-examination of an informant, since he's done it hundreds of times. What is it that he hasn't done that is going to make a difference in his defense of this case?

THE DEFENDANT: Well, I would assume his all around approach to this case would have made a difference in him being -- it's a period of time in there where he just wasn't available.

THE COURT: I know that, but I continued the matter to take that period when he was in rehab into account here.

THE DEFENDANT: Well, that was time -- that time right there could have been time towards preparing for this case that was tooken (sic) away for Mr. Lawson's personal use.

(*Id.* at 15-20)

After this lengthy colloquy, Defendant acknowledged that despite whatever reservations he had with his attorney, Lawson was competent to represent him during the plea. (*Id.* at 20) The prosecutor thereafter indicated that she had been in periodic contact with Attorney Lawson who had discussed the case with her and attempted to negotiate a plea. (*Id.* at 21) The Court thereafter indicated that despite a period of time when Lawson was unavailable due to his own rehabilitation, Defendant was unable to identify with specificity what Lawson has failed to do to adequately prepare. Thus, the Court concluded that Lawson was competent to handle the case on behalf of Defendant. (*Id.* at 21-22)

The Court further inquired of counsel regarding the parameters of the parties' oral plea agreement, and was advised by counsel that Defendant would be required to enter a guilty plea to all counts of the Superseding Indictment, including the forfeiture count, in

13

exchange for the government's recommendation to limit Defendant's relevant conduct to 50 grams of crack cocaine, and no more than 50 grams, which would yield a base offense level of 32 rather than 34.  The government also advised that it agreed to recommend a 10 year sentence, even if the advisory sentencing guideline range was higher than 10 years. According to the estimates by the United States Probation Officer, the recommended 10 year sentence would likely be less than the estimated guideline range of 135-168 months, assuming a total offense level of 30 (base offense level 32 minus 2 levels for acceptance of responsibility) and a criminal history category of IV.

Defendant acknowledged the terms of the oral plea agreement and agreed to those terms.  Defendant also indicated that no one had made any promises to him other than those set forth in the oral plea agreement.  Defendant further advised that no one had forced him into entering a guilty plea and that he was pleading guilty because he was, in fact, guilty of the offenses charged in the superseding indictment.  Defendant also was advised that once the Court accepted the guilty plea, absent some exceptional or compelling reason, he would be bound by the plea and would not be permitted to withdraw it.  The Court also ensured that Defendant understood the advisory sentencing guidelines, and how those guidelines would likely be calculated, which included the potential base offense level and criminal history point calculations, and the minimum mandatory statutory sentence.  Additionally, the Court advised Defendant that despite the government's recommendation of a 10 year sentence upon a guilty plea to all counts, that recommendation was not binding on the Court.  Defendant was also advised that the Court could sentence him to a sentence more severe or less severe than the advisory guideline range, however, based upon a conviction for Count 4, in no event could the Court sentence

him to less than 10 years.

After advising Defendant of the consequences of a guilty plea, the Court ensured that Defendant understood the elements of each offense and the requirement that each count be proven beyond a reasonable doubt.  When the time came for Defendant to admit his guilt, he readily complied.  More particularly as it relates to Counts 1 and 2, Defendant admitted to giving a quantity of crack cocaine to an informant on December 14, 2005 (weighing .485 grams) and January 16, 2006 (weighing .432 grams).  Defendant also admitted that recorded calls were made prior to these sales and that he was paid $50 by the informant for the crack on each occasion.  With respect to Count 3, Defendant acknowledged to possessing a quantity of crack cocaine (weighing 10.36 grams) at his residence on January 18, 2006.  The police also found digital scales at Defendant's residence during the execution of a search warrant.  When asked about his intentions regarding the crack, Defendant advised that he was going to use some of it and sell some of it.  Finally, with regard to Count 4, Defendant admitted that during the four year period ending in July, 2005, he had distributed 50 grams of crack cocaine.  Defendant also agreed that the currency and vehicle charged in Count 5 were at least in part proceeds of drug trafficking.

Following this exhaustive plea colloquy, the Court concluded that Defendant was competent to enter a guilty plea, was aware of the nature of the charges and the consequences of a guilty plea, and that the plea of guilty was a knowing and voluntary plea supported by an independent basis in fact containing the essential elements of each offense.  The Court then accepted Defendant's guilty plea.  Sentencing was then scheduled for August 28, 2007.

On June 6, 2007, thirty-seven (37) days after the Court had accepted his guilty plea, Defendant filed the instant motion to set aside his guilty plea.

### III.   Discussion

Rule 11 of the Federal Rules of Criminal Procedure requires that a district court verify that a defendant's plea is voluntary and that the defendant understands his applicable constitutional rights, the nature of the crimes charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crimes charged. *United States v. Goldberg,* 862 F.2d 101, 106 (6th Cir. 1988); Fed. R.Crim. Pro. 11.  Under Rule 11(d) of the Federal Rules of Criminal Procedure, a defendant may withdraw a plea of guilty prior to sentencing only if he can establish a "fair and just reason" for doing so. *United States v. Dixon,* 479 F.3d 431, 436 (6th Cir. 2007) (*citing* Fed. R.Crim..Pro. 11(d)(2)(B)).  A defendant has the burden of proving that withdrawal of the former plea is justified. *United States v. Hunt,* 205 F.3d 931, 936 (6th Cir. 2000) (citation omitted). According to the Sixth Circuit, "[t]he purpose of Rule 11(d) is to allow a 'hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.' " *Dixon,* 479 F.3d at 436 (*citing United States v. Alexander,* 948 F.2d 1002, 1004 (6th Cir. 1991)).

Here, Defendant asserts that because Attorney Lawson was temporarily suspended from practicing law by the Ohio Bar Association soon after he entered his guilty plea, and Defendant has expressed reservations about Lawson prior to and during the plea colloquy, he should be allowed to withdraw his guilty plea because Lawson's ability to defend him in this action was compromised by his admitted substance abuse issues.  Defendant argues

16

that Lawson's condition hindered him from being able to defend him at trial.

In *United States v. Bashara*, the Sixth Circuit identified the following seven factors which must be considered in determining the whether a defendant has shown a "fair and just reason" to withdraw a guilty plea.  These factors include:

(1)    the amount of time that elapsed between the plea and the motion to withdraw it;

(2)    the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings;

(3)    whether the defendant has asserted or maintained his innocence;

(4)    the circumstances underlying the entry of the guilty plea;

(5)    the defendant's nature and background;

(6)    the degree to which the defendant has had prior experience with the criminal justice system; and

(7)    potential prejudice to the government if the motion to withdraw is granted.

27 F.3d 1174, 1180-1181 (6th Cir. 1994).

More recently, in *United States v. Ellis,* 470 F.3d 275 (6th Cir. 2006), the Sixth Circuit again addressed a defendant's motion to withdraw his guilty plea.  In *Ellis*, the defendant claimed that he could not come up with the money that he agreed to forfeit under the plea agreement and that he was unaware at the time of the plea that the government would seek to forfeit his farm if he could not make cash payment.  In response, just like they do herein, the government asserted that the defendant knowingly, intelligently and voluntarily entered the plea and failed to demonstrate a fair and just reason for withdrawing his guilty plea.

Citing *Bashara,* the Sixth Circuit weighed the seven factors to determine whether the defendant had stated a fair and just reason to allow withdrawal of a plea.  In doing so, the court noted that "the factors listed are a general, non-exclusive list and no one factor is controlling." *Ellis,* 470 F.3d at 281.  The court ultimately concluded that the trial court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea given the length of time between the entry of the defendant's plea and the motion for withdrawal, the absence of any breach of the plea agreement, the defendant's confession of guilt, a careful reading of the plea agreement's terms to the defendant during the plea hearing, and the defendant's criminal history. *Id.* at 286.

Upon reviewing each of the seven factors to the case herein, the Court concludes that Defendant's motion should be denied.

**IV.    Application of the *Bashara* factors**

**1.    The timeliness of the motion/reason for untimeliness**

In this case, Defendant entered his guilty plea on April 30, 2007.  Defendant's motion to set aside that guilty plea was filed on June 6, 2007, thirty-seven (37) days later. Although the period of time is just slightly more than five weeks, the length of time between Defendant's plea of guilty and his motion to withdraw is a strong factor supporting the denial of the motion.  The Sixth Circuit has affirmed the denial of a motion to withdraw based on an even shorter period of time.  *See e.g. United States v. Spencer,* 836 F.2d 236 (6th Cir. 1987) (motion to withdraw guilty plea denied where time period between the entry of plea and motion to withdraw was 35 days).

Additionally, Defendant has failed to present a *valid* reason for the delay in moving to withdraw.  Even if the Court were to assume for purposes of this factor that Defendant

retained Attorney Darrell Cox to file the instant motion to withdraw as soon as he learned Attorney Lawson had been temporarily suspended from practicing law by the Ohio Bar Association, that fact would not alter the Court's conclusion.  Attorney Lawson's temporary suspension by the Ohio Bar Association has no impact on the voluntariness of Defendant's plea, and provides no valid reason for withdrawal of his guilty plea.  Moreover, the time period in which Attorney Lawson was in rehabilitation did not preclude Defendant from adequate representation.  When questioned *ad nauseam* about what Lawson did, or failed to do, as a result of his drug addiction and rehabilitation, Defendant failed to point to any specific deficiencies, other than general statements along the lines that Lawson could have been working on the case.

### 2.    The assertion of his innocence

In analyzing this factor, the record reflects that Defendant unequivocally admitted his guilt on all counts during the plea colloquy.  This fact strongly supports the denial of the motion to withdraw.  During the plea hearing held in this matter on April 30, 2007, Defendant acknowledged he had sold quantities of crack cocaine to an informant on the dates charged in Counts 1 and 2, had possessed a quantity of crack cocaine with intent to distribute it as charged in Count 3, and had sold 50 grams of crack cocaine during a four year period ending in July, 2005 as alleged in Count 4.

The record also reflects that Defendant was provided a significant amount of information and evidence to allow him to make an informed decision regarding whether to change his plea or proceed to trial.  Based upon this compelling evidence, which included several recorded telephone calls between the informant and the Defendant, it appears that he concluded that a change of plea was the prudent course to follow.  Although he did not

enter his guilty plea until the day the trial was scheduled to begin, the record reflects that this decision was not made in haste or confusion. Last minute decisions to plead guilty are commonplace, especially in situations where the government agrees to forego arguments regarding additional relevant conduct and recommend a probable variance from the otherwise advisory sentencing guideline range.

For all of these reasons, consideration of this factor weighs heavily in favor of denying the motion to withdraw guilty plea.

### 3.    The circumstances surrounding the guilty plea

Since the Court has already extensively discussed the fourth factor, that is, the circumstances surrounding Defendant's entry of his guilty plea (*supra* at p. 5-15), an extensive further discussion is unwarranted here. Suffice is to say, although he pled guilty the morning of trial, Defendant was given time to consult with counsel and weigh his options before deciding to plead guilty.

As is reflected in the April 30, 2007 plea colloquy set forth herein, the Court took great care in questioning Defendant regarding his decision to enter his guilty plea and made sure he understood the possible consequences of the plea, including the sentencing guidelines and statutory penalties. He was also informed that the guidelines were now advisory and the Court could sentence him below or above the otherwise applicable advisory range based on the so-called *Booker* factors, also known as section 3553(a) factors. The Court also made it abundantly clear that Defendant retained the option of going forward with trial rather than pleading guilty.

The only limits were that the Court told Defendant it would not grant another continuance or provide a new attorney. Defendants are not permitted to delay criminal

proceedings by entering a voluntary guilty plea only to then move to withdraw that plea. Although Defendant argues that he was hurried into pleading guilty, the record reflects otherwise. The Court gave Defendant more than adequate time to consult with his attorney before entry of the plea. Simply put, Defendant's plea was knowingly and voluntarily entered and was not the product of duress. Nor was it hastily entered.

The Court carefully reviewed the essential terms of the oral plea agreement, and Defendant admitted to the factual basis in support of the charges contained in the superseding indictment. The Court specifically advised Defendant that the exact recommended guideline calculation would not be available until the completion of the Pre-sentence report. As noted previously, Defendant was aware of Attorney Lawson's addiction and rehabilitation issues prior to entering his guilty plea. Despite that knowledge, Defendant acknowledged that he understood the rights he was giving up by entering a plea, and that no one had made any promises to induce him to plead guilty in this case.

The fact that Lawson has been temporarily suspended does not provide a basis for withdrawal of his guilty plea. *See United States v. Chavez*, 242 F.3d 377, 2000 WL 1707937 (8th Cir. 2000) (unpublished) (district court did not abuse its discretion by denying defendant's motion to withdraw his guilty plea, in which defendant alleged that his former attorney, whose license had since been suspended, had not adequately communicated with him and had misled him)

For all of these reasons, this factor strongly favors denial of Defendant's motion to withdraw guilty plea.

### 4.      The background of the defendant and his prior exposure to the criminal justice system.

These factors also favor denying Defendant's motion to withdraw.     Defendant is a 47 year old high school graduate.  He has held steady employment at a local Northern Kentucky business for approximately 13 years.  Although Defendant has an admitted history of substance abuse, he does not appear to have suffered from any physical or psychological problems which required treatment.  Defendant also has had numerous arrests and/or convictions throughout his life which shows that he is familiar with the criminal justice system.  In light of Defendant's age, background, criminal history and his prior experience with the criminal justice system, the Court finds that he had the capacity to evaluate the impact of his guilty plea as well as the risk he would be taking by proceeding to trial.

For these reasons, this factor also weighs against Defendant's motion to withdraw his plea.

### 5.      Prejudice to the government if the motion is granted

Because Defendant has not demonstrated a fair and just reason for vacation of his guilty plea, the Court need not address the final factor, which is the potential prejudice to the government. *Alexander,* 948 F.2d at 1004.

### V.    <u>Conclusion</u>

Although the plea was entered the same day the trial was to begin, the record reveals that it was neither hastily entered nor made with unsure heart or confusion. Because Defendant has not met his burden of establishing a fair and just reason to withdraw his plea, and for the reasons stated herein,

**IT IS ORDERED** that Defendant's Motion to Set Aside Guilty Plea (Doc. # 60) be, and it is, hereby **denied**.

This 22nd day of June, 2007.



Signed By:

David L. Bunning

United States District Judge

G:\DATA\ORDERS\CovCrim\2006\06-65-Order-Denying-Motion-To-Withdraw-Guilty-Plea.wpd